IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THOMAS STEPHEN DEEN, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 4:19-CV-00074 |
| LOWE'S HOME CENTERS, LLC, ) | |
| GLOBAL MACHINERY COMPANY, ) | |
| JINDING GROUP CO., LTD., and ) | |
| JIANGSU JINDING ELECTRIC TOOLS CO., LTD., ) | |
| ) | |
| *Defendants*. ) | |

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Thomas Stephen Deen files this Amended Complaint against Defendant Lowe's Home Centers, LLC; Global Machinery Company; Jinding Group Co., Ltd.; and Jiangsu Jinding Electric Tools Co., Ltd. (collectively, "***Defendants***").[1] In support thereof, Plaintiff respectfully shows the Court as follows:

**I.**

**PARTIES**

1. Plaintiff Thomas Stephen Deen ("***Plaintiff***") is an individual residing in Frisco, Collin County, Texas.

2. Defendant Lowe's Home Centers, LLC ("***Lowe's***") is a foreign corporation organized and existing under the laws of the State of North Carolina with its principal place of

---

[1] Pursuant to Fed. R. Civ. P. 15(a), Lowe's has provided its written consent to the filing of Plaintiff's Amended Complaint.

business located at 1000 Lowe's Boulevard, NB3TA, Mooresville, North Carolina 28117-8520. Lowe's has appeared and answered herein for all purposes. Lowe's may be served through its counsel of record: Melanie Okon, Sarika Patel, MUNCK WILSON MANDELA, LLP, 600 Banner Place Tower, 12770 Coit Road, Dallas, Texas 75251.

3. Upon information and belief, Global Machinery Company ("**GMC**") is a business entity organized and existing under the laws of Australia, having a principal place of business at 44-55 South Centre Road, Melbourne Airport, Victoria, 3045 Australia. Upon information and belief, GMC supplies products to Lowe's and/or its related companies, including in Texas, and GMC supplied the Sander at issue to Lowe's. GMC does not maintain a regular place of business in this state or a designated agent for service of process. As a result, GMC may be served through the Texas Secretary of State.

4. Upon information and belief, Jinding Group Co., Ltd. ("***Jinding Group***") is a business entity organized and existing under the laws of China, having a principal place of business at Jinding Road, Huangli Town, Wujin, Changzhou, Jiangsu, P.R. China 213151. Upon information and belief, Jinding Group manufactures electric tools which are supplied to and sold by Lowe's and/or its related companies, including in Texas, and Jinding Group and/or its subsidiary manufactured the Sander at issue. Jinding Group does not maintain a regular place of business in this state or a designated agent for service of process. As a result, Jinding Group may be served through the Texas Secretary of State.

5. Upon information and belief, Jiangsu Jinding Electric Tools Co., Ltd. ("***Jinding Electric Tools***") is a business entity organized and existing under the laws of China, having a principal place of business at Jinding Road, Huangli Town, Wujin, Changzhou, Jiangsu, P.R. China

213151. Upon information and belief, Jinding Electric Tools is a subsidiary of Jinding Group that manufactures electric tools which are supplied to and sold by Lowe's and/or its related companies, including in Texas. Further, upon information and belief, Jinding Electric Tools manufactured the Sander at issue. Jinding Electric Tools does not maintain a regular place of business in this state or a designated agent for service of process. As a result, Jinding Electric Tools may be served through the Texas Secretary of State.

## II.

## JURISDICTION AND VENUE

6. The amount in controversy, exclusive of interest and costs, is within the minimum jurisdictional limits of this Court.

7. Jurisdiction is proper in this Court because there is diversity of citizenship between the parties as provided by section 1332(a) of Title 28 of the United States Code.

8. At all times relevant to these causes of action, Defendants had continuing and systematic contacts with the State of Texas by delivering their products into the stream of commerce with the expectation that they would reach and be used in the State of Texas. Defendants had minimum contacts with the State of Texas and were doing business in the state by, among other things, designing, manufacturing, promoting, distributing, and/or selling consumer products—such as that involved in this litigation—in the State of Texas. The causes of action alleged herein arise from such contacts.

9. Venue is proper in the Eastern District of Texas pursuant to section 1391 of Title 28 of the United States Code because the incident made the basis of this suit occurred in Denton County, Texas, which is in the Sherman Division of the Eastern District of Texas.

### III.

### **FACTS**

10. Plaintiff is an experienced petroleum geologist who is a partner and executive vice president in an upstream oil and gas company focused on the acquisition and horizontal development of operated properties in the Permian Basin.

11. On December 28, 2017, Plaintiff was in his garage at his prior home in Denton County helping his son build a wooden car for a pinewood-derby race. To sand the pinewood-derby car, Plaintiff was using a quarter-sheet sander branded as Task Force (the "***Sander***"), which Plaintiff bought from Lowe's. Upon information and belief, Jinding Group and/or Jinding Electric Tools manufactured the Sander, and GMC supplied the Sander to Lowe's. Plaintiff held the pinewood-derby car in his left hand and the Sander in his right hand as he worked to create an aerodynamic, wooden race car.

12. Plaintiff was wearing safety glasses. However, as he continued to sand, Plaintiff's safety glasses became covered in saw dust, obstructing his view. To inspect his work, Plaintiff moved his safety glasses to his forehead.

13. While inspecting his work and not actively sanding, the Sander unexpectedly exploded launching metal shrapnel and debris out each side. To protect his two sons and father, who were standing nearby, Plaintiff immediately pulled the Sander's cord out of the electrical socket, thereby turning the Sander off.

14. When the Sander exploded, a large piece of metal shrapnel penetrated and embedded in Plaintiff's right eye. After Plaintiff reached for his eye to manually inspect it, the piece of metal shrapnel dislodged from his eye and fell to his garage floor.

15. Upon information and belief, an inspection of the Sander revealed that the metal rotor located in the bottom of the Sander fractured and disintegrated, allowing metal shrapnel to explode out each side of the Sander's housing. Plaintiff's inspection also revealed that the Sander's housing failed and was unable to contain the metal fragments of the fractured rotor. *See* **Exhibit A** hereto. After the explosion, the Sander's housing was cracked in the rear and had completely failed along each side. *Id.* Further inspection revealed a large void—more than half the thickness of the rotor web—on the portion of the rotor that remained on the rotating shaft post-explosion. *See* **Exhibit B** hereto. This void is located very near the center of the rotor and, as such, upon information and belief, is subject to higher centrifugal forces during operation. Upon further information and belief, this void produced a weak point at a location where strength is needed, thereby resulting in the Sander's failure.

16. As a result, Plaintiff suffered severe, permanent, and disabling injuries to his right eye among other injuries and damages.

## IV.

## CAUSES OF ACTION

***Count I: Strict Products Liability***

17. Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

18. Defendants, by and through their employees, agents, representatives, vice-principals, subsidiaries, and affiliates, are the designers, manufacturers, distributors, promoters, and/or sellers of the Sander, which, at the time it was designed, manufactured, distributed, promoted, and/or sold was a defective product, unreasonably dangerous to

potential users in that it was prone to failure during the intended use, unable to control or contain a fragmented rotor, lacked adequate safety and/or mitigation systems, and allowed the Sander's rotor to fragment and disintegrated during its intended use.

19. The Sander in question was in substantially the same defective condition on the date of Plaintiff's injury as it was when Defendants placed it into the stream of commerce. The Sander's defective condition and Defendants' failure to warn of these defects made the Sander unreasonably dangerous and was a producing and/or proximate cause of Plaintiff's injuries.

20. There were safer alternative designs to eliminate or significantly reduce the possibility of the type of catastrophic injuries suffered by Plaintiff. These alternatives (i) were safer because the risks of catastrophic personal injury would be eliminated or significantly reduced, (ii) would have prevented or significantly reduced the risk of injury without impairing the utility of the products; and (iii) were technologically-feasible and economically-feasible. For example, among other things, Defendants could have (i) designed the Sander with a housing or casing sufficient to contain a fractured rotor and (ii) designed and manufactured the Sander with a rotor strong enough to avoid fracture.

21. The Sander was defectively manufactured and unreasonably dangerous to a person who might reasonably be expected to use it because the Sander deviated in its construction or quality from its specifications or planned output in a manner that renders it unreasonably dangerous. For example, the void in a critical part of the rotor web created a weak point that was unreasonably dangerous and likely to fail during foreseeable uses.

22. Further, the Sander was defectively marketed and unreasonably dangerous to a person who might reasonably be expected to use it because it lacked adequate, sufficient,

conspicuous, and unambiguous warnings and instructions concerning the risks, dangers, hazards, and harms presented by a foreseeable failure during the intended use, and a reasonable means to reduce such risks, dangers, hazards, and harms, as alleged above.

23. It was foreseeable to Defendants that the Sander could and would be used in the manner that it was being used at the time of the incident at issue.

24. The design, manufacturing, and marketing defects discussed above were a proximate and/or producing cause of the incident and the severe injuries suffered by Plaintiff.

25. Defendants knew, or should have known, of the dangers of defectively designing manufacturing, and marketing products for this intended use. Defendants, among other acts, did not adequately design or manufacture the Sander; did not adequately test to determine whether design, manufacturing, and marketing defects existed; and did not adequately warn end users of the Sander either (i) of a failure during its intended use or (ii) of the catastrophic personal injuries that would likely result.

**Count II:    Negligence**

26. Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

27. At all times relevant to this cause of action, Defendants, acting by and through their employees, agents, and/or vice-principals, had a duty to act reasonably and prudently in the design, manufacture, promotion, and/or distribution of the Sander.

28. Upon information and belief, Defendants breached this duty, by and among other acts and/or omissions, designing, manufacturing, distributing, and promoting a Sander prone to failure during its intended use; designing, manufacturing, distributing and promoting a

Sander with inadequate safety and/or mitigation systems; by failing to adequately test and/or inspect the design and manufacturing of the Sander; and by failing to warn users of the known dangers to a user during this intended use.

29. The above-referenced acts and/or omissions, each individually and collectively, were proximate causes of the injuries sustained by Plaintiff.

*Count III: Breach of Warranty*

30. Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

31. When it left Defendants' control, the Sander—as alleged above—was not merchantable and was not reasonably fit for its intended and reasonably foreseeable uses because it was prone to failure during its intended use, unable to control or contain fragments of a fractured rotor, lacked adequate safety and/or mitigation systems, and allowed the Sander's fragmented rotor to escape the housing and become damaging shrapnel.

32. The Sander remained not merchantable and not reasonably fit for its intended and reasonably foreseeable uses without material change, alteration, or abuse up to and including the date of Plaintiff's injury.

## V.

## DAMAGES

33. Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

34. Plaintiff has sustained damages as follows:

    a.    Physical pain, suffering, and mental anguish in the past and future, enhanced by the nature, duration, severity, and permanence of the injury;

    b.    Reasonable and necessary medical, therapy, rehabilitative, and attendant care expenses incurred in the past and future;

    c.    Loss of earning capacity and vocational disability in the past and future;

    d.    Physical impairment in the past and future; and

    e.    Physical disfigurement, scars, and visible results of the injury in the past and future.

35.    Defendants' above-described acts and/or omissions are the proximate and/or producing causes of Plaintiff's damages.

36.    The amount of damages incurred by Plaintiff exceeds the minimum jurisdictional limits of this Court.

## VII.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer these allegations, and that upon final trial of this matter, Plaintiff recover judgment against Defendants as follows:

    A.    All past and future damages;

    B.    All costs of court allowed by the Federal Rules of Civil Procedure and/or deemed appropriate by the Court;

    C.    Pre-judgment and post-judgment interest at the applicable legal rate; and

    D.    All other and further relief—both general and special, at law or in equity—to which Plaintiff may show himself to be justly entitled.

RESPECTFULLY SUBMITTED:

/s/Chip Brooker
Eugene A. "Chip" Brooker, Jr.
Texas Bar No. 24045558
cbrooker@flbranson.com

BROOKER LAW, PLLC
750 N. St. Paul St., Suite 600
Dallas, Texas 75201
214.217.0277 [Telephone]
469.405.1049 [Facsimile]

ATTORNEYS FOR PLAINTIFF
THOMAS STEPHEN DEEN

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that—on the 5th and 12th days of June 2019—he conferred with Ms. Okon, lead counsel for Lowe's, concerning the substantive changes in Plaintiff's Amended Complaint. As a result, pursuant to FED. R. CIV. P. 15(a), by and through counsel, Lowe's has provided its written consent to Plaintiff's filing of this Amended Complaint.

/s/Chip Brooker
Chip Brooker

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that—on this 12th day of June 2019—a true and correct copy of the foregoing instrument was served upon all other counsel of record via email.

***Via Email and ECF***
Melanie K. Okon
Sarika Patel
MUNCK WILSON MANDELA, LLP
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251

/s/Chip Brooker
Chip Brooker